Given to_____in the State of _____this 3rd day of August, 1978.

GUARANTOR: **Paul Sriberg**

**COMMONWEALTH**
**vs.**
**Sean CALLAHAN**

**No. 82-130-134**

Superior Court/Middlesex County
Commonwealth of Massachusetts

**April 2, 1982**

**Anthony Sullivan,** counsel for plaintiff.
**Joseph Brodigan,** counsel for defendant.
**FINDINGS, RULINGS, ORDER AND MEMORANDUM OF DECISION ON THE DEFENDANT'S MOTION TO DISMISS**
**Introduction**
By his motion to dismiss the defendant seeks dismissal of the above indictments charging him variously with two instances

of motor vehicle homicide, with operating to endanger, with speeding, and with failure to keep to the right, all for the reasons as claimed by the defendant in his motion that "G.L.c. 90C, § 2, requires such dismissal in that the Commonwealth did not timely deliver the citation to the defendant." As set out more fully below, in my opinion any failure to deliver the citations to the defendant in a so-called timely manner was and is excused on the peculiar facts here as well as coming within a specific exception set out in G.L.c. 90C, § 2.

### Findings of Fact

After a hearing of the above motion, from the evidence by way of testimony, exhibits, stipulations and inferences therefrom, I find the facts relevant and material to the relief sought by the defendant in his motion as follows:

On April 17, 1981 the defendant, then 18 years old, was driving a motor vehicle which became involved in a very serious one-vehicle accident. A photograph of the remains of that vehicle which depicts the seriousness of the accident is Exhibit 1. Police Officer John Alford, then and for the previous nine years a Winchester Police officer, responded to the scene of the accident at 5:30 A.M. on April 17, 1981 where he observed the bodies of three persons on the ground around the vehicle and another young male person who was wandering around near the vehicle. Officer Alford immediately administered first aid and concluded that at least one of the persons on the ground was dead. Officer Alford then saw to it that the three persons who were on the ground, including the defendant, were placed in an ambulance which then went to Winchester Hospital. Officer Alford's observations of the defendant at the scene were that, among other things, the defendant had a very serious head injury, he was not conscious and he was bleeding from the ears. Officer Alford later went to the Winchester Hospital and determined that the defendant was driving the vehicle in the accident.

Officer Alford in effect completed his investigation of the accident as of 10:00 or 11:00 A.M. on April 17 and prepared three citations, including two citations each for operating to endanger causing a motor vehicle homicide and a third citation for speeding, failure to keep to the right and operating to endanger. Officer Alford retained the operator's copy of the citations, attached them to his report of the accident, and turned them into a superior at Winchester Police Headquarters. Officer Alford turned in the other copies of the citations to other personnel at Winchester Police Headquarters also.

Officer Alford retained the operator's copies because it was his honest belief at that time that the defendant was not going to survive. Officer Alford had learned later that the defendant had been transferred from the Winchester Hospital to the Massachusetts General Hospital and was in critical condition. Officer Alford was aware of the defendant's home address where the defendant lived with his parents when he prepared the citations. In deciding what to do with the defendant's copies of the citations, Officer Alford spoke with a Lieutenant Crawford of the Winchester Police who indicated that Alford should sit tight for a few days and make daily checks on the defendant's medical condition.

Thereafter, Officer Alford made daily checks on the defendant's medical condition for about a week by speaking by telephone to persons at the Massachusetts General Hospital who appeared to know what was going on. On all occassions when Officer Alford telephoned the Massachusetts General Hospital to inquire about the defendant's physical condition, he identified himself as a police officer. According to Officer Alford, it was reported to him that the defendant was unconscious every day until on April 29 when Officer Alford learned that the defendant had regained consciousness three or four days before and that defendant's condition had stabilized. After the first week the defendant was at the Massachusetts General Hospital, Officer Alford either called the Hospital every other day or another officer called

on his behalf and informed Officer Alford of the defendant's medical condition. After Officer Alford learned that the defendant had regained consciousness, he and another officer on April 29 delivered the defendant's citations to the defendant's parents' home address. Officer Alford never attempted to serve these citations on the defendant at the Massachusetts General Hospital because he felt that it would not serve any purpose to do so for the reason that it was his sense that the defendant would not know what was going on. Alford felt also that it was not appropriate to deliver the citations to the defendant's parents' home where he lived for the reasons that he believed that the defendant's parents had enough problems being concerned with whether or not the defendant was going to survive.

Alford was and is aware of the details of G.L.c. 90C, § 2, but he is not an attorney and he is not aware of its legal significance. Officer Alford was aware that an application for criminal complaints for the offenses the defendant is currently charged with was made to the Woburn District Court on April 21, 1981 by the Woburn Police but the complaints were not issued by that District Court until May 26, 1981. Exhibit 2, which is the Hospital Record concerning the defendant's stay at the Massachusetts General Hospital, sets out the following information from nurses' notes. From April 17 to April 22, the defendant was unconscious. On April 22 the defendant opened his eyes and responded to commands. On April 23 he was alert, he opened his eyes partially and was responding "Yes" and "No" to questions. On April 24 he opened his eyes, he was awake, he listened to the radio, and he responded to questions. On April 25 his speech was clear, he followed commands, he indicated his hunger, and he was alert. On April 26 the defendant was alert but confused, he was able to manipulate a television set, he could feed himself and wash with soap. On April 27 he was alert, able to converse, he talked fluently, and he was sent to physical therapy where he was alert, oriented and expressed a desire to go home. On April 28 and 29 the defendant was awake and alert. On April 30 he was discharged at 10:00 A.M. Officer Alford did not become aware of those details until much later.

## Rulings of Law and Memorandum of Decision

The purpose of G.L.c. 90C, § 2, is to bring those who violate automobile laws uniformly to justice. G.L.c. 90C, § 2; **Commonwealth v. Mullins**, 367 Mass. 733, 736 (1975). This purpose is effectuated by the provisions which seek first to prevent police abuse, see, **Commonwealth v. Drew**, Mass. App. Adv. Sh. (1980) 524, 531; and second to provide motorists with immediate notice that they are to be cited for motor vehicle violations so that they may prepare their defense. See, **Commonwealth v. Giannino**, 371 Mass. 700, 703 (1977).

Police abuse is prevented by the "no-fix" requirements of the statute which have been strictly applied. See, **Commonwealth v. Clinton**, 374 Mass. 719, 721 (1980) (filing of complaint more than eight days after citation written requires dismissal). The requirements, aimed at ensuring that there is no time lapse between an officer's issuance of a citation and its removal beyond police interference, **Commonwealth v. Drew**, **supra** at 531, have been complied with on the facts of this case. Officer Alford wrote the citation after his investigation of the accident was completed, delivered it to a superior officer, and a complaint was delivered to the court of jurisdiction within three days.[1]

---

1. The citation was written Friday, April 17, 1981, and a complaint was applied for Tuesday, April 21, 1981 - the statute exempts Sundays and holidays from the three-day period.

The defendant's motion to dismiss is grounded on Officer Alford's delay in delivering the original citation to the defendant. G.L.c. 90C, § 2, requires that a citation be issued to the offender at the scene of the offense "except where the violator could not have been stopped or where additional time was 'reasonably necessary to determine the nature of the violation or the identity of the offender or where the court finds that some circumstance not inconsistent with the purpose of this section...justifies the failure' " **Id.** Clearly, the unconscious defendant could not have been given a citation at the scene of the offense. Therefore, the citation "shall be delivered to the offender or mailed to him at his residential or mail address or to the address appearing on his license or registration." **Id.**

As the defendant correctly notes, this section of the statute has not been construed. However, in keeping with the general intent of the statute, it appears that delivery should be made as soon as reasonably possible. Cf., **Commonwealth v. Pizzaro,** 370 Mass. 636, 639 (1976) (off-duty officer observing violation returned home, wrote citation and delivered to offender the next day acted as soon as reasonably possible). A failure to so deliver requires a dismissal of the complaint even though not specified by the statute. **Commonwealth v. Clinton, supra** at 721 (uncertainty resolved in favor of defendant mandating dismissal).

Therefore, unless a court finds some purpose, not inconsistent with the statutory intent which justifies the delay,[2] the defendant's motion must be granted.

The purpose of delivery of the citation to an offender is to give him or her prompt notice of the nature of the alleged offense. **Commonwealth v. Pappas,** Mass. Adv. Sh. (1981) 2002. This is to insure that a motorist will not be prejudiced by a delay in preparing a defense. **Commonwealth v. Gorman,** 356 Mass. 355, 357 (1969). Therefore, arrest of an offender makes notice unnecessary. **Commonwealth v. Shea,** 356 Mass. 358, 360 (1969); **Commonwealth v. Gorman,** supra at 358.

This rationale was applied in **Commonwealth v. Pappas,** Mass. Adv. Sh. (1981) 1999, where a forty-minute delay in issuing a citation was justified to allow the police to clear the scene of a fatal accident. **Id.** at 2003. The Court compared "the fleeting and nonserious nature" of most motor vehicle violations with those involving serious crimes, where it is "inconceivable that the defendant would be unaware of the seriousness" of a situation involving a fatality. **Id.** at 2002-2003.

In the most recent application of the statute, the Appeals Court refused to dismiss a complaint where the citation was issued twenty-seven days after the accident. **Commonwealth v. Provost,** Mass. App. Ct. Adv. Sh. (1981) 1686, 1692. Again, due to the serious nature of the motor vehicle violation and the necessity for careful police investigation, the Court found that it would not further the intent of the statute to dismiss the charges. **Id.**

Here the defendant's case also involves a serious automobile vehicle violation which resulted in two deaths. It would not further the intent of the statute to dismiss the indictments here. There was no delay in the issuance of the citation. Rather, the defendant's complaint is that notice was delayed. However, as is indicated by the **Pappas** and **Provost** decisions, the seriousness of the accident vitiates any real question as to whether the defendant had notice of the offense. Further, the earliest date upon which the defendant would have had meaningful notice of the offenses would have been on April 23, 1981 when he was fully alert for the first time. Officer Alford, keeping daily contact with the hospital to ascertain the defendant's condition, acted

---

2. There is no exception relating directly to this provision of the statute. However, the Court's holding in **Commonwealth v. McCarthy,** Mass. App. Adv. Sh. (1981) 725, which concluded in **dicta,** that the exceptions applied to other provisions of the statute, is instructive.

476

reasonably under the circumstances. While hindsight suggests that it would have been preferable to send the original citation to his parents' home when the citation was completed, this Court does not believe that is sufficient cause for dismissal of the indictments here.

**Order**

Accordingly, on the basis of the above findings and rulings, the defendant's motion is ordered denied.

<div align="right">

**Paul G. Garrity**
**Justice of the Superior Court**